Which is the last case. Numbers 22-1360, 22-1761, United States v. Foxx. And it's Mr. Mitchell, of course. Hello, Mr. Mitchell. May it please the court. Good afternoon, Your Honors. My name is Gregory Mitchell and I represent Ms. LaTonya Foxx, Judge. She's actually in court today watching this procedure. So I just wanted to let the court know that she's very much involved here. As pointed out in the brief, I initially filed an Anders brief after talking to Ms. Foxx and going over the issues that I thought could be raised after we successfully pled and got what I felt was a very good sentence and response in the district court. But in response to that Anders brief, I clearly missed an issue with respect to restitution. And in the process of going back and doing this supplemental brief, we've learned a lot about restitution and how it has to be handled going forward. In regards to the brief here, I would just like to point out a couple of issues with respect to how the court should rule in reviewing the case here. As I pointed out in my brief, I thought the appropriate standard of review was an abuse of discretion because the issue of restitution was hotly contested in conjunction with the calculation for loss. In the cases that I had reviewed, it was clearly not simply waiving the issue of the calculation of restitution. It was challenged, although our number after consultation with my client was clearly different than and even the process of coming up with the restitution amount is clearly different than what the court pointed out that was missed by me, which was respect to the mandatory Restitution Act. But notwithstanding that, the question becomes, did the district court essentially, because it simply used the abuse of discretion, the calculation that was provided by the PSR, was that an abuse of discretion or just assumed that that was a calculation and just missing, which is why I argued that it should be an abuse of discretion standard, which is a little bit more favorable to Ms. Fox. All right, so Mr. Mitchell, suppose we do see it your way and use an abuse of discretion standard. As I read this record, the district court looks at several different materials, the indictment, the kinds of things that she said, and sees this as a scheme. We need to define the scheme, of course, given the nature of the offenses of conviction, going all the way back to 2013. And the district court also says, so it makes that fact-finding. That's when the scheme begins. And it also appropriately, because it's restitution we're talking about, not sentencing length, limits the transaction it's going to look at to the ones in which she was personally involved. This isn't irrelevant conduct. You're being responsible for stuff that other people did, because that's not restitution. But what's wrong with her methodology? What evidence is there that it was so far afield when it found that the scheme goes all the way back to 2013 that there's subversive error? As this court pointed out and would believe a decision, Justice Hamilton, essentially it's a question of what is the offense of conviction here is where you start. Well, the scope of the scheme. But nobody focuses the district judge on that terribly well. But it does nonetheless make findings that this goes back to 2013. Yes, it does, Judge, and I point that out in my brief at page 11. The district court specifically said that he narrowed his restitution amount to those with respect to Ms. Fox alone, not part of any loss created. Right, right, right. That's what gets it down to the $1.2 million some level. Yes, but the real question is that, again, what I learned is that the Mandatory Victim Restitution Act starts with the issue of what is the victim. It's a sort of a civil remedy. And in this particular case, there is one victim with respect to the offense of conviction, and that's Ms. There aren't any others. This wasn't a conspiracy in this case that was charged here. She didn't plead to a conspiracy. The only question becomes is whether or not the judge deciding to look as he did to her initial conduct was an abuse of discretion because he's using a formula to determine restitution, which is outside of the scope of the Mandatory Victim Restitution Act. So I thought in your brief you were arguing that there were two different schemes. We need to identify the scheme, but I couldn't see where the evidence was that these were two different unrelated schemes. From the order that you provided and the issue was is that there could be a potential that even though the offense of conviction was different and separate, it's a possibility that the evidence was overlapping and there could be two schemes. So my brief focused on the fact not only that the offense of conviction was totally separate, but also that there was a separate scheme. The offense of conviction just focused on, you know, that one. The wire fraud. Yes, Judge. Active wire fraud. But the issue with respect to the separate scheme, as was pointed out, all during the argument, is that Ms. Fox had a tax fraud scheme that involved the education credit that began in 2012 and continued. The wire fraud scheme in this case was in 2016, and it was only with her disseminating information. She sends the personal identifying information about this particular person. And clearly what was charged here, and again, I didn't understand it, and that was part of the issue with trying to craft an appropriate plea declaration. Her scheme was not charged technically from 2012 to 2015, and it wasn't charged at all. And so the question was, well, that's going to be part of the relevant conduct, and it's possible if we don't plead to the one charge that you clearly did, the government could easily supersede and add this whole other scheme with this evidence that they have and we'll be in a worse position. So the strategic thing to do was to try to figure out how to essentially have her admit what she did, what she clearly was charged with and did, and contest all the others. Yes, Judge? Finish your thought. So the question in preparing the supplemental brief was what exactly was the scheme that the judge was focused upon, and it was clearly from the arguments in the sentencing hearing with respect to how to calculate the sentence, the actual loss, everything was focused primarily on the guideline calculation and the loss. And that was where the focus and his sentencing for the restitution was also focused on that scheme as well, that you are going to be accounted for the relevant conduct. And that's how we focused on it. There was no issue with respect to the wire fraud scheme at all. And as I pointed out in my brief, it just wasn't there. It just no one raised it. And, again- So doesn't that point us in the direction of plain error review? I think plain error is what most of the decisions that I review point out, I think, and Wood and Indidra, both of them all say plain error because, but the language is that the issue was not, there was no challenge to the restitution at all. Right. And I will just say, speaking as an ex-district judge, that would seem to point in favor of affirmance. That is, the district judge here seems to have resolved all the issues presented to him. Yes, and that's correct. Unfortunately, though, my understanding, and please correct me if I'm wrong, the mandatory Victim Restitution Act statutorily is designed primarily as a sort of civil remedy. And even though the judge and the parties didn't do it, the restitution order must be pursuant to the statute. And so to the extent that the judge has to, the court has to apply the standard test for the statute, by choosing not to do that is an abuse of discretion, is why I pointed it out that way. But I believe also, again, the plain error reaches to the same result. Even if we agree that the district court should have explicitly defined the scheme, how can we, do you think, conclude that the error was obvious, given that the Flea Declaration and the PSR broadly defined the scheme? And in the challenge to the restitution amount, Ms. Fox assumed the applicability of the broader scope. Well, with respect to the Flea Declaration in particular, she fled to the particular offense of conviction, not the other charges. In regards to the broader scheme, it's clearly within the context of the relevant conduct. And that was strategic for a reason, because obviously what you want the district court judge to understand is that she's not minimizing her criminal conduct for calculating her sentence. You want to make sure she's accounting for that. But there was no indication at all, and there's no discussion, really, about restitution, which is why the district court sort of bifurcated it. Our argument was really about the sentencing issue. And the mistake was made is that once the restitution issue was separated out, I should have focused on the statutory definition of what and how you calculate it separately. I didn't do it. I know it now and plan to make sure that all my colleagues understand this. Okay. Thank you. And you've used your time, but we helped you do that. Thank you. So we will give you the two minutes that you requested, Mr. Mitchell. Thank you. Thank you. Hello, Mr. Whelan. May it please the Court. Nathaniel Whelan here on behalf of the United States of America. Can I start you, please? Please. Doesn't the record allow for the possibility that there were the two distinct schemes here, one encompassing the exchange of information with the group in discount and a different scheme involving the systemic filing fraudulent returns exploiting the education credit? Your Honor, I don't think this record allows for that inference. At least it certainly does not plainly allow for that. The plea declaration. So the defendant admits in her plea declaration she engaged in a scheme to defraud from 2014 to 17. She admits that includes including fraudulent tax returns with these false education credits. She admits there are other means by which the scheme to defraud was effectuated. She's sharing PII with her co-conspirators. She's inflating business losses, inflating business income. We have a couple different ways the scheme was effectuated and the returns were fraudulent, but it is all part of the charge scheme. And the charge scheme was not 2012 to 2014. It was 2014 to 2017. That's what she admits. That's what Judge DiGiulio found by adopting the PSR at sentencing. That's also what he found in his statements to the court or his statements during sentencing. The standard of review is plain error here. The defendant did not object to the scope of the scheme at any point, didn't object in filings, didn't object to the PSR statement, the section called scheme to defraud. The only objection raised was that she should get credit for audited returns that she believed the IRS got back. The IRS, she believed, recouped money. The district court found that wasn't the case in the district court's order on restitution. Why should we be straining to patch together a definition of the scheme from the PSR and the plea declaration, as you suggested in the briefs, when the district court is entrusted with that task and is in the best position to define it? A couple of responses. I don't think this court does have to strain. I think the indictment is pretty clear on what the scheme to defraud is. I think the plea declaration is pretty clear as to what the scheme to defraud is. And frankly, I think the district court is pretty clear about what the scheme to defraud is when he says at page 24, you and your co-defendants employed a scheme to defraud the IRS by preparing and filing phony federal tax returns. Among other things, it appears you utilized education tax credits that you knew were fraudulent to increase tax refunds. Amongst other things, the court acknowledged there were a couple of different ways that the scheme was effectuated again, but it kind of honed in on this particular issue, the education credits. And that's all Ms. Fox is being asked to pay in restitution, the returns that she submitted that contains these education credits. That is the entirety of her restitution obligation. That's the $1.2 million. And so that is what the district court found was the scheme to defraud. She never objected to that being the scheme to defraud. I just want to address a couple other questions and issues raised in the opening argument. MS is not the victim in the case. The IRS is the victim in this case. They were the ones who defrauded out of millions of dollars through these nearly 700 tax returns. Though Ms. Fox pled guilty to one wire, this court's noted time and again that restitution applies to the scheme, not just the single wire. The case that both parties cite is Locke at 643F3247. The court sets out that standard. It's not just the one wire that you're held responsible for for restitution purposes. It's the entire scheme. Frankly, Your Honors, unless there are any other questions, I think we'd rest on our briefs and ask this court to affirm. Thank you. Thank you very much. Mr. Mitchell, thank you. Mr. Whalen, thank you very much. Can you give him just two minutes? Oh, I'm sorry. I gave it. I'm taking it. It's right up there. Oh, this is terrible. Oh, I am sorry. That's right, Judge. I just thank you for the extra time. The real question, again, is the calculation of the restitution amount pursuant to the statute in this case and the requirement that the district judge be fair, specific in identifying and demarcating the scheme. It wasn't done in this case at all, and as you pointed out correctly, that the record doesn't allow it to be determined by this court at all. Yes, there's language back and forth because it was hotly contested. This issue of the amount of restitution and loss was highly contested. But not in terms of scheme or not. I thought it was just contested because of refunds or audits or other sorts of things. I didn't see people making a there were two schemes or three schemes, that type of argument. No, and that was because of the way the plea declaration was actually accepted, which is the one charge, which was not a scheme, which was not a conspiracy. It was one wire fraud with the MS victim that essentially was a separate kind of issue where it was actually disseminated from this box, not her doing the tax. So that was the focus, and again, the record is devoid of anything because the focus really from the district court was about the loss calculation primarily and the relevant conduct that should be accounted, not the mandatory victim restitution act. Unless you have any other questions, thank you very much. And thank you again, Mr. Mitchell. Thank you again, Mr. Rallin. And the case will be taken under advisement.